UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

NRRM, LLC,                                    )
                                              )
        Plaintiff,                            )
                                              )
v.                                            )    Case No. 4:23CV1133 HEA
                                              )
MVF US LLC, et al.,                           )
                                              )
        Defendants.                           )

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss Plaintiff's Complaint, [Doc. No. 11]. Plaintiff has filed a response to the Motion, to which Defendants have filed a reply. For the reasons set forth below, the Court will deny the motion.

Facts and Background[1]

Plaintiff's Complaint alleges the following:

Plaintiff, ("CarShield"), is in the business of selling vehicle service contracts ("VSCs") which cover various motor vehicle repairs. As a part of CarShield's business, it operates the internet website carshield.com and it uses, and is the

---

[1] The recitation of facts is set forth for the sole purpose of this Opinion. It in no way relieves the parties of the necessary proof of the facts in later proceedings.

owner of the federally registered trademarks CARSHIELD and CARSHIELD.COM (the "Marks") in connection with its sales of VSCs.

CarShield is the owner of a federal trademark registration, No. 5,133,928, issued by the USPTO on January 31, 2017, for the standard character mark CARSHIELD for "[v]ehicle service contracts on vehicles manufactured by others for mechanical breakdown and servicing." CarShield is the owner of a federal trademark registration, No. 5,092,752, issued by the United States Patent and Trademark Office ("USPTO") on November 29, 2016, for the standard character mark CARSHIELD.COM for "[v]ehicle service contracts on vehicles manufactured by others for mechanical breakdown and servicing."

Defendants operate and advertise on its website gowizard.com. Defendants place advertisements for direct competitors of CarShield. Defendants purport to operate a website for customers to see which companies are the highest rated VSC companies, but in fact it is a "pay-to-play" website where competitors of CarShield pay Defendants to get top listings on their website, misleading customers about what the top-rated companies are.

Defendants advertise the GoWizard website by using and infringing the Marks and other confusingly similar marks and phrases in their internet advertising strategy. Specifically, Defendants buy the keyword "CARSHIELD" on Google, Bing, and Yahoo! so that their generic and false ads for a VSC company rating

website displays as an advertisement in the prominently displayed sponsored ads section of search engines.

Defendants have been aware of the Marks for some time yet continue to infringe by using this unlawful advertising strategy. Despite Defendants' knowledge of CarShield, Defendants have continued to use the Marks and confusingly similar marks and phrases to unlawfully direct traffic to Defendants' own website. Defendants' actions constitute willful trademark infringement and unfair competition.

Defendants also advertise VSCs as "extended warranties" VSCs are not warranties, which are provided by a manufacturer.

CarShield operates the website carshield.com and uses the Marks in commerce in connection with the sale of VSCs to cover repairs to vehicles. CarShield has continuously used various Marks in commerce to market vehicle service contracts since at least as early as April 2016. It has devoted substantial resources to the marketing, advertising, and promotion of the Marks in connection with selling vehicle services contracts.

CarShield's website at www.carshield.com displays the Marks, where customers can receive quotes for vehicle services contracts. It also uses the Marks in print, television, and radio advertisements to market vehicle service contracts. As a result of CarShield's continuous use of the CARSHIELD Marks in connection

with its advertising, promotion, distribution, and sale of vehicle service contracts, the relevant consuming public has come to recognize the CARSHIELD Marks as originating from and used by CarShield, and to associate and identify the services offered and sold under the Marks exclusively with CarShield. CarShield derives invaluable goodwill from this recognition, association, and identification by the consuming public and the trade. CarShield has achieved such recognition of the Marks that is now famous to the consuming public.

Defendants operate their website advertising competing VSC companies by using the Marks and confusingly similar and in fact identical marks and phrases. Specifically, Defendants purchase the keyword CARSHIELD on search engines so that their advertisements are listed prominently in the sponsored advertisements on search engines. When a customer sees Defendants' sponsored advertisements, they just advertise VSCs generally rather than a specific VSC. A customer then has no idea that if they click on the ad, they will be directed to a pay-for-play website that advertises competing VSC companies.

Defendants' systematic, deliberate use of the Marks in internet advertising, such as Google AdWords, Bing Sponsored Sites, or Yahoo! did not begin until after CarShield began using the website carshield.com and the Marks. Defendants have used and continue to use the Marks and confusingly similar terms, marks, phrases,

and names to advertise companies that compete directly with CarShield. Defendants' infringing activities are likely to cause significant confusion among consumers, as well as initial interest confusion and initial source confusion.

Defendants' generic advertisements and website use terms such as "auto warranty" to refer to direct competitor vehicle service contracts. Defendants' generic advertisements market "auto warranties." Defendants' website claims that the vehicle service contracts it offers are warranties. On their "Auto Warranty" page, Defendants state that they provide the "Best Extended Auto Warranty in July 2023" Defendants use these terms despite the fact that they are not an automobile manufacturer or seller and are thus unable to offer "warranties" as defined by federal law under the Magnuson-Moss Warranty Act. See 15 U.S.C. § 2301. The term is also prohibited by multiple states' laws and regulations, including Missouri's.

While Defendants promote their website primarily as a rating website where consumers can find out who the top-rated vehicle service companies are, in fact Defendants place the companies who pay them the most to be listed at the top.

This pay to play system is unfair competition and falsely advertises what is really going on. Defendants then provide the top paying competitors of CarShield customer leads based on visitors to their website who fill out a form. If a customer visits gowizard.com, a vehicle service company will be listed at the top of the rated

companies. That is because that company paid to be listed first. There is also a form a visitor can fill out to be referred to a top-rated company, which again is not based on a neutral rating system but instead is based on whether and how much a company paid to get the referral.

Plaintiff's Complaint sets out the following claims: Federal Trademark Infringement (Lanham Act Section 32 (15 U.S.C. § 1114), Count I; Federal Unfair Competition/Trademark Infringement (Lanham Act Section 43(a) (15 U.S.C. § 1125(a))), Count II; Common Law Trademark Infringement, Count III; Violation of Mo. Rev. Stat. 44 417.061, 417.066 (State Trademark Infringement), Count IV; Federal False Advertising (Lanham Act Section 43(a) (15 U.S.C. § 1125(a)), Count V; Trademark Dilution (Lanham Act Section 43(c) (15 U.S.C. § 1125(c)), Count VI; False Advertising and Unfair Competition (Lanham Act Section 43(a) (15 U.S.C. § 1125(a))), Count VII.

Defendants move to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6).

## Discussion

In order "[t]o survive a motion to dismiss, a complaint must plead sufficient factual matter to 'state a claim to relief that is plausible on its face.'" *Edwards v. City of Florissant*, 58 F.4th 372, 376 (8th Cir. 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim is facially plausible if the plaintiff pleads facts that

allow the court to draw the reasonable inference that the Defendants is liable for the misconduct alleged." *Ahern Rentals, Inc. v. EquipmentShare.com, Inc.*, 59 F.4th 948, 953 (8th Cir. 2023) (internal quotation marks and alteration omitted) (quoting *Iqbal*, 556 U.S. at 678)). "If, on the other hand, the plaintiff pleads facts that are merely consistent with a Defendants' liability, the complaint stops short of the line between possibility and plausibility of entitlement to relief." *Id*. (internal quotation marks and citation omitted); accord *Edwards*, 58 F.4th at 377 ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." (quoting *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937)).

In deciding whether a complaint satisfies the plausibility test, the Court must "accept 'as true the complaint's factual allegations and grant[ ] all reasonable inferences to the non-moving party.'" *Park Irmat Drug Corp. v. Express Scripts Holding Co*., 911 F.3d 505, 512 (8th Cir. 2018) (alteration in original) (quoting *Braden v. Wal-Mart Stores, Inc*., 588 F.3d 585, 591 (8th Cir. 2009)). This rule "is inapplicable to legal conclusions," which the Court may disregard. *Iqbal*, 556 U.S. at 678. Likewise, "'naked assertions devoid of further factual enhancement,' do not suffice, nor do '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Roberson v. Dakota Boys & Girls Ranch*, 42 F.4th 924, 928 (8th Cir. 2022) (quoting *Iqbal*, 556 U.S. at 678). With few

exceptions, the Rule 12(b)(6) analysis is constrained to factual matter alleged in the complaint. See *Miller v. Redwood Toxicology Lab., Inc*., 688 F.3d 928, 931 (8th Cir. 2012) ("[T]he court generally must ignore materials outside the pleadings, but it may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings." *Id*. (citations omitted)).

**Counts I-IV Trademark Infringement and Unfair Competition Premised on Trademark Infringement**

Defendants seek dismissal of the trademark infringement claims arguing Plaintiff has not set forth sufficient factual allegations to state a claim for infringement. Primarily, Defendants point out that using another's trademarks as internet search terms without more, are not actionable. Plaintiff does not dispute the point, rather, it argues the Complaint indeed alleges more than simply using its trademarks as search terms.  Plaintiff argues initial interest confusion is actionable under the Lanham act, and that it has sufficiently pled such a claim.

> [I]initial-interest confusion is "confusion that creates initial customer interest, even though no actual sale is finally completed as a result of the confusion." 4 McCarthy § 23:6. Most circuits that have addressed the question "recognize the initial interest confusion theory as a form of likelihood of confusion which can trigger a finding of infringement." Id. (collecting cases). In general, the theory of initial-interest confusion recognizes that a senior user's goodwill holds value at all times, not merely at the moment of purchase. The theory protects against the threat of a competitor "receiving a 'free ride on the goodwill' of [an] established mark." *Checkpoint Systems, Inc. v. Check Point Software Technologies, Inc*., 269 F.3d 270, 295 (3d Cir. 2001) (quoting *Mobil Oil Corp. v. Pegasus Petroleum*

*Corp.*, 818 F.2d 254, 260 (2d Cir. 1987)). This free ride may result in the consumer falsely inferring an affiliation between the junior and senior users, provide the junior user with an opportunity it otherwise would not have achieved, or deprive the senior user of an actual opportunity. *Id.* at 293–95. At least one circuit has "equated initial interest confusion to a 'bait and switch scheme.' " *Id.* at 294 (quoting *Dorr-Oliver, Inc. v. Fluid Quip, Inc.*, 94 F.3d 376, 382 (7th Cir. 1996)).

In the present case, the parties dispute as a general matter whether a theory of initial-interest confusion is a viable theory of infringement in our circuit. They also dispute whether the relevant consumers—consumers investigating mattresses and online shoppers in general—are so sophisticated that the issue of consumer sophistication could properly be removed from the jury. To address these questions, it is necessary first to review more generally the test for confusion and what our Court has said about when confusion must exist.

The Lanham Act provides several forms of protection for commercial goodwill. Trademarks are protected against infringement, that is, the use of similar marks on similar or related products or services if such use creates a likelihood of confusion. 15 U.S.C. § 1125(a)(1)(A); see also 15 U.S.C. § 1114(1)(a). If a trademark is deemed "famous" it may be protected against dilution in the form of "tarnishing" or "blurring." Id. § 1125(c)(2)(C) (the "tarnishing" of a famous mark is a general damaging of the goodwill associated with a mark due to a "similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark"); id. § 1125(c)(2)(B) (the "blurring" of a famous mark is the "impair[ment] [of] the distinctiveness of the famous mark" "arising from the similarity between a mark or trade name and a famous mark"). The prohibition of dilution "protects the holder of a famous trademark from misappropriation of its investment in the mark" regardless of confusion. *Everest Capital Ltd. v. Everest Funds Mgmt.*, 393 F.3d 755, 762 (8th Cir. 2005). Finally, the Lanham Act also protects more generally against false advertising, false representations, and unfair competition. 15 U.S.C. § 1125(a)(1)(B).1

To assess the likelihood of confusion as required for a showing of infringement, our circuit employs a list of nonexclusive factors for addressing a core inquiry: whether the relevant average consumers for a product or service are likely to be confused as to the source of a product or service or as to an affiliation between sources based on a defendant's use.

> See *Anheuser–Busch, Inc. v. Balducci Publ'ns*, 28 F.3d 769, 774 (8th Cir.1994) (noting that protection extends " 'against use of [plaintiff's] mark on any product or service which would reasonably be thought by the buying public to come from the same source, or thought to be affiliated with, connected with, or sponsored by, the trademark owner' " (quoting McCarthy § 24.03 (3d. 1992) (alteration in original))).

*Select Comfort Corp. v. Baxter*, 996 F.3d 925, 932–34 (8th Cir. 2021).

As pled, all of Plaintiff's trademark infringement and unfair competition claims—whether arising under the Lanham Act, Missouri statutes, or common law—depend upon a showing that the defendants' use of Plaintiff's trademarks was likely to cause confusion. *Automated Layout Techs., LLC v. Precision Steel Sys., LLC*, 2023 WL 8018739, at *5 (D. Neb. Nov. 20, 2023); *Jacobs v. Fareportal, Inc.*, No. 8:17CV362, 2019 WL 11029415, at *9 (D. Neb. Sept. 19, 2019) (citing *Sensient Techs. Corp. v. SensoryEffects Flavor Co.*, 613 F.3d 754, 763 n. 3 (8th Cir. 2010)). Thus, for each of these claims, the same six-factor test is relevant to deciding whether Plaintiff has pled a likelihood of confusion, which includes: (1) the strength of the owner's mark; (2) the similarity between the owner's mark and the alleged infringer's mark; (3) the degree to which the products compete with each other; (4) the alleged infringer's intent to "pass off" its goods as those of the trademark owner; (5) incidents of actual confusion; and (6) the type of product, its cost, and conditions of purchase. *Sensient Techs. Corp*, 613 F.3d at 763). This is typically a fact-intensive inquiry that is not appropriately resolved on a motion to dismiss.

If an internet search using certain marks returns advertisements or a website that are not clearly labeled, and which consumers are likely to believe are affiliated with the trademark owner, consumer confusion may be plausibly alleged. *Jim S. Adler, P.C. v. McNeil Consultants, L.L.C.*, 10 F.4th 422, 429 (5th Cir. 2021). Likewise, if a customer is "hijack[ed] to another website by making the customer think he or she is visiting the trademark holder's website (even only briefly)" when clicking on generic advertisements, consumer confusion may be plausible. See *id*.

Plaintiff has alleged this precise type of confusion. Assuming the truth of the allegations, as the Court must at the motion to dismiss stage, Plaintiff has sufficiently notified Defendants of the claims it seeks to prove later in this action. The Complaint satisfies the requirements of Rule 8 and *Twombly*. The motion is denied as to Counts I-IV.

**Count V-False Advertising Act**

Title 15 U.S.C. § 1125(a), broadly speaking, "make[s] certain types of unfair competition federal statutory torts." *Am. Ass'n of Orthodontists v. Yellow Book USA, Inc*., 434 F.3d 1100, 1102 (8th Cir. 2006) (citation and quotation marks omitted); accord *Allsup, Inc. v. Advantage 2000 Consultants, Inc*., 428 F.3d 1135, 1138 (8th Cir. 2005) ("The purpose of [the Lanham Act] is to protect persons engaged in commerce against false advertising and unfair competition.") (citation and quotation marks omitted). Section 1125(a) "prohibits persons from making

false or misleading representations of fact in commercial advertisements about ...

another person's goods." *Process Controls Int'l, Inc. v. Emerson Process Mgmt*.,

753 F. Supp. 2d 912, 929 (E.D. Mo. 2010) (citation omitted). As relevant here, the

statute includes as follows:

> Any person who, on or in connection with any goods or services ... uses in commerce any ... false or misleading description of fact, or false or misleading representation of fact, which ... in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of ... another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

§ 1125(a)(1)(B).

To establish a claim for false advertising under § 1125(a), a plaintiff must

demonstrate:

> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statements to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement.

*Deflecto, LLC v. Dundas Jafine Inc*., 142 F. Supp. 3d 835, 855 (W.D. Mo. 2015)

(quoting *United Indus. Corp. v. Clorox Co*., 140 F.3d 1175, 1180 (8th Cir. 1998)).

Defendants argue that Plaintiff has not alleged facts to satisfy the elements a false

advertising claim.

Defendants argue that Plaintiff alleges "auto warranty" gives the false impression that Defendants market warranties for automobiles. Defendants attempt to resolve factual disputes through their motion by arguing the explanation Defendants give on their website of what auto service contracts and warranties are. As Plaintiff argues, this argument requires an analysis of factual matters not properly before the Court at this time.

As to Defendants' argument that Plaintiff has not adequately pleaded facts of any actionable "false" statement under the Lanham Act, as the Eighth Circuit has explained, there are two types of statements giving rise to a false advertising claim under the Lanham Act: (1) a "literally false" statement, and (2) a "literally true statement" that "implicitly conveys a false message, is misleading, or is likely to deceive consumers." *Buetow v. A.L.S. Enters., Inc.*, 650 F.3d 1178, 1185 (8th Cir. 2011) (citation omitted). A statement is literally false if it is "an explicit representation of fact that on its face conflicts with reality." *Eli Lilly & Co. v. Arla Foods, Inc.*, 893 F.3d 375, 382 (8th Cir. 2018). Accordingly, when a commercial ad "can reasonably be understood as conveying different messages, a literal falsity argument must fail." *Buetow*, 650 F.3d at 1185 (citation and quotation marks omitted). Whether a factual assertion is literally false depends on the full context in which the statement is made and is generally a question of fact. *Emerson*, 753 F. Supp. 2d at 930.

Plaintiff alleges that the use of "warranty" is false because only auto manufacturers can provide car warranties. The Court notes that to prevail under either theory as this case moves forward, Plaintiff faces a rigorous and demanding burden. See *Buetow*, 650 F.3d at 1185 (describing the burden to prove that a statement is literally false as "rigorous"); *Ethex Corp. v. First Horizon Pharm. Corp.*, 228 F. Supp. 2d 1048, 1056 (E.D. Mo. 2002) (recognizing that to prevail under the literally-but-misleading theory a plaintiff "bears the ultimate burden of proving actual deception by using reliable consumer or market research"). The Court finds that Plaintiff has adequately alleged a false-advertising claim under the Lanham Act to withstand Defendants' motion to dismiss.

**Count VI-Trademark Dilution**

"Dilution occurs when consumers associate a famous mark that has traditionally identified the mark holder's goods with a new and different source." *Luigino's, Inc. v. Stouffer Corp.*, 170 F.3d 827, 832 (8th Cir. 1999). Defendants argue that the Court should dismiss Plaintiff's trademark dilution claim because Plaintiff has not plausibly pled that its trademarks are famous.

"[A] mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A). When determining whether a mark is famous, the Court considers a number of factors, including: (1) "[t]he duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties"; (2) "[t]he amount, volume, and geographic extent of sales of

goods or services offered under the mark"; (3) "[t]he extent of actual recognition of the mark"; and (4) whether the mark is registered. *Id*.

*Abbott Lab'ys v. Revitalyte LLC*, 2024 WL 3791990, at *5 (D. Minn. Aug. 13, 2024).

Plaintiff has pled that it has used the marks continuously in commerce since April 2016. It further claims to have devoted substantial resources to the marketing, advertising, and promotions of the marks in connection with selling vehicle services contracts. It urges that Defendants' use of its marks tarnishes the marks and blurs in the minds of consumers the distinctiveness of the marks. Plaintiff has put forth sufficient facts at this stage to plausibly support a claim that its trademarks are famous. The Court therefore denies Defendants' motion to dismiss as to this claim.

**Count VII-False Advertising and Unfair Competition**

Defendants argue Count VII fails to state a claim for false advertising and unfair competition. In this Count, Plaintiff relies on its theory of "pay to play" to claim Defendants' website is false and/or misleading. Plaintiff alleges that Defendants engage in deceptive and misleading practices through their pay-to-play website by advertising so-called top ranked warranty companies to consumers on behalf of Plaintiff's competitors in exchange for a fee, all while telling the public that it is just a review and ranking site. The Complaint further alleges Defendants refer customers to the top paying companies, again misleading

customers about it not being a true rating service. The allegations are clear as to what Plaintiff claims is the misleading advertising; the question of whether this activity qualifies as false and misleading is a question of fact which cannot be ascertained though a motion to dismiss.

Likewise, the question of whether Defendants' disclaimers excise the website from the realm of misleading and false advertising again presents factual questions which may not now be decided.

### Conclusion

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss, [Doc. No. 11], is **denied**.

Dated this 23rd  day of August,  2024.


_____
    HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE