**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

NRRM, LLC,

        Plaintiff,

v.

        **Case No.: 4:23-cv-01133-HEA**

MARKETING VF LTD, et al.,

        Defendants.

**STIPULATED ORDER REGARDING THE PRODUCTION OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION**

The Court ORDERS that the following terms with respect to the collection, review, and production of electronically stored information ("ESI") in this action (the "Action") as set forth herein (the "ESI Stipulation"), shall apply to this action.

**GENERAL PROVISIONS**

1.    This Order is to facilitate the collection, processing, production and exchange of documents and information in the Action by the Parties in the form of ESI.

2.    To the extent reasonably possible, the production of documents shall be conducted to maximize efficient and quick access to documents and minimize related discovery costs. The terms of this Order should be construed to ensure the prompt, efficient, and cost-effective exchange of information consistent with the Federal Rules of Civil Procedure, the Local Rules, and any orders by the Court.

3.    The Parties have identified liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI. Each eDiscovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of eDiscovery including the location, nature, accessibility, format, collection, search methodologies and production of ESI in this matter. The Parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

## DEFINITIONS

4. As used herein, the term "ESI" means discoverable documents or data existing in electronic form pursuant to Fed. R. Civ. P. 34(a) and includes, but is not limited to, e-mails and attachments, voice mail, instant messaging and other electronic communications, word processing documents, text files, spreadsheets, graphics, audio and video files, databases, electronic calendars, telephone logs, transaction logs, phone text messages, Internet usage files, websites and accompanying data, data on social media profiles, offline storage or information stored on removable media, information contained on laptops or other portable devices and network access information and backup materials, Native Files and the corresponding Metadata which is ordinarily maintained.

5. As the term is used herein, ESI is not to be deemed "inaccessible" based solely on its source or type of storage media. Inaccessibility is based on the burden and expense of recovering and producing the ESI and the relative need for the data. The Parties agree that they shall not be required to preserve or search for information in the following data sources that are not reasonably accessible: back-up tapes, deleted data, disaster recovery systems, fragmented of slack data, offline archives, temporary online access data like cache and cookies, system files, and data sources that are not used for normal business operations and/or require unreasonable expense or burden to search and produce. However, the parties reserve the right to seek such ESI in connection with the action should the need arise and subject to a showing of good cause. If the Court orders the production of ESI from sources that are not reasonably accessible upon a showing of good cause, the parties will meet and confer on a process for sampling data to determine value.

6. The Parties shall make a reasonable inquiry to ascertain whether they possess or control discoverable information in the form of telephone call logs, voice-mails, instant messages, and mobile phone text and picture messages. To the extent a Party reasonably believes discoverable information exists in telephone call logs, voice-mails, instant messages, and mobile phone text and picture messages, the Party shall preserve the discoverable information. However, a Party has no duty to preserve telephone call logs, voice-mails, instant messages, and mobile phone text and

picture messages if, after reasonable inquiry, the Party believes that no discoverable information exists on telephone call logs, voice-mails, instant messages, and mobile phone text and picture messages. For clarification, this paragraph is not intended to supplant or reduce any of the Parties' obligations under the Federal Rules of Civil Procedure related to the preservation of ESI or discoverable information.

7. As used herein, the term "Metadata" means: (i) information embedded in a Native File that is not ordinarily viewable or printable from the application that generated, edited, or modified such Native File; and (ii) information generated automatically by the operation of a computer or other information technology system when a Native File is created, modified, transmitted, deleted, sent, received or otherwise manipulated by a user of such system. Metadata is a subset of ESI.

8. As used herein, the term "Native File(s)" means ESI in the electronic format of the application in which such ESI was created, viewed, and/or modified. Native Files are a subset of ESI.

9. As used herein, the term "Load File" means a file that relates to a set of scanned or electronic images or electronically processed files that indicate where individual pages or files belong together as documents, including attachments, and where each document begins and ends. A Load File may also contain data relevant to the individual documents, such as Metadata, coded data, text, and the like. Load Files must be obtained and provided in prearranged formats to ensure transfer of accurate and usable production images and data.

10. As used herein, the term "Static Image(s)" means a representation of ESI produced by converting a Native File into a standard image format capable of being viewed and printed on standard litigation support software. The most common forms of Static Images used in litigation are ESI provided in either Tagged Image File Format (TIFF, or .TIF files), JPG, or Portable Document Format (PDF).

11. As used herein the term "OCR text" means text that is generated by converting Static Images into searchable text format.

3

12. As used herein, the term "Producing Party" shall mean any Party to this action or any third party, including its counsel, retained experts, directors, officers, employees, or agents, who produces any Discovery Material during discovery for this action.

13. The term "Receiving Party" shall mean any Party to this action, including its counsel, retained experts, directors, officers, employees, or agents, who receives any Discovery Material from a Producing Party during this action.

14. As used herein, the term "Discovery Material" shall mean any material produced, served, exchanged, or generated during the discovery process.

15. As used herein, the term "Messages" shall mean messages sent using communications platforms including, but not limited to, Slack, Workplace, Webex, and Teams.

## DOCUMENT COLLECTION AND REVIEW

16. The Parties will meet and confer regarding proper document collection, searching, identification, and review techniques or technologies. The Parties are aware of the importance of cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's rules to promote the "just, speedy, and inexpensive determination" of this action, as required by Fed. R. Civ. P. 1. The Parties' cooperation includes propounding reasonably particular discovery requests, identifying appropriate limits to eDiscovery, including appropriate and reasonable limits on custodians, identifying relevant and discoverable ESI, establishing time periods for eDiscovery and other parameters to limit and guide preservation and eDiscovery issues. The Parties agree to use reasonable, good faith, and proportional efforts to preserve, identify and produce relevant and discoverable information consistent with Fed. R. Civ. P. 26(b)(1). Any search methodology employed must support the use of stemmed (e.g., using * to include variations on a keyword), fuzzy, and Boolean searches. The documents on which the search terms hit and that are within the date and custodian restrictions are referred to as the "Review Set."

## FORM OF PRODUCTION

17. ESI shall be produced in the form specified herein. Outside of the standard production processing identified below, no Producing Party may reformat, scrub, or alter the ESI to intentionally downgrade the usability of the data.

18. With the exception of the documents identified in Paragraph 22, the Parties shall produce all ESI in single-page TIFFs in black and white, with Load Files for all documents. If the TIFF images provided are low quality or difficult to read, the Parties agree that they can request revised versions and such request will not be unreasonably denied. For any ESI that should be produced in color, the Parties shall produce that ESI in single-page JPG. For PPT documents, the Parties shall produce ESI in single-page JPG in color. Production images will have hidden information, such as redlines, track changes, comments, hidden slides, or hidden rows/columns, revealed and visible on the face of the document.

19. The Parties agree to set the time for all documents to the Central Time Zone.

20. The Parties shall produce Metadata Load Files for each ESI document which include the following fields or their equivalents:

| Field Order | Field Name | Description | Example |
|---|---|---|---|
| 1 | BEGDOC | The beginning bates number of this document | ABC00000001 |
| 2 | ENDDOC | The last bates number of this document | ABC00000010 |
| 3 | BEGATTACH | The beginning bates number of the document family | ABC00000001 |
| 4 | ENDATTACH | The last bates number of the entire document family | ABC00000027 |
| 5 | CUSTODIAN | Custodian to whom the data is associated | John Doe |
| 6 | RECORDTYPE | Type of electronic record: | Email, Attachments, eDoc |
| 7 | FROM | Author of the email message | Mary.Smith@hotmail.com |
| 8 | TO | Main recipient(s) of the email message, by email address. | JohnDoe@gmail.com |
| 9 | CC | Recipient(s) of "Carbon Copies" of the email message. | Michael123@yahoo.com |
| 10 | BCC | Recipient(s) of "Blind Carbon Copies" of the e-mail message. | helpdesk@omnivere.com |
| 11 | SUBJECT | Subject of the email message. | Fw: Urgent |

| | | | |
|---|---|---|---|
| 12 | DATESENT | Date when the email was sent. The date is formatted in US format: mm/dd/yyyy | 02/24/2007 |
| 13 | TIMESENT | Time when the email was sent. The time is formatted in US format: hh:mm:ss | 11:20:30 |
| 14 | TIMEMODIFIED | Last time the document was modified. | 11:20:30 |
| 15 | FILEEXT | File extension of native file. | .msg, .pst, .xls |
| 16 | AUTHOR | Author field from metadata of a native file. | Msmith |
| 17 | DATECREATED | Date when the file was created. The date is formatted in US format: mm/dd/yyyy | 02/24/2007 |
| 18 | DATEMODIFIED | The last date on which the document was modified | 02/24/2007 |
| 19 | CONFIDENTIALITY | Confidentiality designation | Confidential |
| 20 | FILESIZE | Size of native file, in bytes | 2546683 |
| 21 | PAGECOUNT | Number of pages | 3 |
| 22 | FILENAME | Original filename of native file. Contains subject of e-mail message for e-mail records. | Real estate holdings.xlsx |
| 23 | NATIVEFILEPATH | Path to the native file for the document. | Natives\EFXAA00000001.xlsx |
| 24 | ALLCUSTODIANS | All custodians who possessed a copy of the document (including the name in the Custodian field) from whose file the item would have been produced if it had not been de-duplicated | John Doe, Jane Doe, Peter Smith, Michael Jones |
| 25 | MD5HASH | Unique identifier, similar to a fingerprint, extracted from all files. | D564668821C34200FF3E32C9BFDCCC80 |
| 26 | TEXTPATH | Path to the extracted text for the document, for mapping | Text\EFXAA00000001.txt |

The Producing Party shall consistently use the same load file format for all of its productions, unless expressly agreed otherwise by the Receiving Party. The Parties agree to meet and confer on any issues related to the above metadata fields.

21.     This ESI Stipulation does not create any obligation to create or manually code metadata fields that are not automatically generated by the processing of the ESI, or that do not exist as part of the original metadata of the document; provided, however, that the Producing Party must populate the (1) BegBates, (2) EndBates, (3) BegAttach, (4) EndAttach, (5) AllCustodians, and (6) the Confidentiality field, as necessary.  These fields should be populated for all produced ESI, as well as paper Documents converted to electronic form subsequent to the Court's entry of this ESI Stipulation and Order, regardless of whether the fields can be populated pursuant to an

6

automated process.

22.     The Parties shall provide extracted text for all files that originated in electronic form. When no extracted text is available for a file that originated in electronic format, OCR text shall be provided unless the production of OCR text for such document is not technologically feasible. Extracted or OCR text shall be provided with one text file per document. OCR text shall be provided for all documents that originated in hard copy, i.e., hard copy that was scanned for purposes of the production.

23.     The Parties shall provide Native Files for XLS, CSV, Audio, Video, and non-standard format documents, unless redacted or withheld. Native files shall be produced with a link in the NATIVEFILEPATH field, along with extracted text (where extracted text is available) and applicable metadata fields set forth above. A Bates numbered TIFF or PDF placeholder indicating that the document was provided in native format must accompany every native file.

24.     Parent-child relationships (the association between an attachment and its parent document, which are referred to as "families") that have been maintained in the ordinary course of business must be preserved. The Producing Party will make reasonable efforts to produce responsive families together unless one or more members of the family are privileged or are non-responsive business information in whole, and in that case, the family will be Bates numbered with a placeholder for the removed document and, if applicable, the removed document will be logged on the Privilege Log. Links within a document are not considered attachments.

25.     All documents must be endorsed with sequential Bates numbers on the lower right-hand corner of all images, with any claimed confidentiality status in the lower left-hand corner. The Bates Numbering and the confidentiality status will be applied in a manner that does not obliterate, conceal, obscure, or interfere with any information from the source document. Each document should be assigned a Bates number that must always: (1) be unique across the entire document production; (2) maintain a constant length of six numeric digits (including 0- padding) across the entire production; (3) contain only alphanumeric characters, no special characters or embedded spaces; and (4) be sequential within a given document.

26. The Parties agree that they may use tools that allow for native redaction of spreadsheets where possible to avoid additional expense.

27. The Parties will make reasonable efforts to de-duplicate ESI documents globally prior to production. The Parties may discuss further whether additional methods of de-duplication across various sets of documents will reduce both Parties' burden to review and produce data. Notwithstanding the forgoing, attachments to emails shall not be eliminated from the parent email because they are duplicative of a document or email attachment elsewhere in the production.

28. The Parties agree to produce Discovery Material contained in Messages in 24-hour segments based on calendar days. The parties further agree to produce additional unproduced 24-hour segments upon request, where there is a reasonable basis to conclude that additional discoverable material exists within such unproduced segments. For the avoidance of doubt, an indication that a conversation concerning relevant and responsive subject-matter in a produced segment was cut off, and is continued in an adjacent unproduced segment, constitutes one example of a reasonable basis to request the production of an additional adjacent segment.

29. Hard Copy documents should also be produced using parameters above, to the extent possible. As necessary, Hard Copy documents will be unitized to preserve page breaks between documents and otherwise allow separate documents to be identified. Hard Copy documents will be scanned using OCR technology and extracted text will be provided, unless the cost would outweigh the usefulness of the scanning (for example, when the condition of the paper is not conducive to scanning and will not result in accurate or reasonably useable/searchable extracted text or when the document contains significant handwritten information. A party producing ESI in electronic form need not produce the duplicate document from the Hard Copies.

## PRIVILEGE LOG

30.    For any document withheld in its entirety based on privilege, the Producing Party will produce a Privilege Log in spreadsheet format, except that the Parties have no obligation to log documents or information generated after the date of the commencement of this lawsuit.

31.    For each entry in the Privilege Log, the Producing Party will provide the following fields to the extent available: Privilege Log Number, Email subject (if applicable) or File name, Date Sent (or last modified), All custodians, From (or Author if applicable), To, CC, BCC, the basis for asserting privilege, a privilege document description, and the production bates range (if applicable). For all fields except the basis for asserting privilege and the privilege document description, the parties may auto-generate the metadata from the review software using specific metadata fields. With respect to the "Email Subject or File Name" field, the Parties may redact the information where the contents of these fields may reveal privileged information. In the Privilege Logs, the Parties shall identify each instance in which it has modified the content of the "Email Subject or File Name" field by using the phrase "[REDACTED]" in the spreadsheet cell. For Emails and Messages, only the top-level Email or Message in the thread need be included in the Privilege Log.

## MANNER OF PRODUCTION

32.    The Parties agree to produce data in accordance with Federal Rule of Civil Procedure 34(b)(2)(E)(i) and the case law interpreting the Parties' responsibilities under that section.

33.    The Parties may produce ESI via FTP transmission, or via other media as otherwise agreed, and shall identify the Bates range contained in the respective production. The Parties agree to exchange contact information for where data should be sent and to advise when data is uploaded for transmission or otherwise sent to a Party. The Producing Party will identify the Bates number range of each production in a cover letter or production log accompanying the production. If a Producing Party skips a Bates number or set of Bates numbers in a production, the Producing Party will identify and note the gap in the cover letter or production log accompanying the production.

34. The Parties agree to promptly alert each other concerning any technical problems associated with complying with this ESI Stipulation. To the extent compliance with this ESI Stipulation imposes an undue burden with respect to any protocol, source, or search term, the Parties shall promptly confer in an effort to resolve the issue. If the Parties are unable to resolve the issue by mutual agreement after such conference, the Party seeking relief may move the Court for relief for good cause shown.

## NO INADVERTENT WAIVER

35. Nothing herein shall be interpreted or deemed to waive any privilege recognized by law, including attorney-client privilege, the attorney work-product doctrine, and/or any other privilege that may be applicable, or shall be construed to imply that any documents produced under the terms of this ESI Stipulation are properly discoverable, relevant, or admissible in this Action or in any other litigation, mediation, or arbitration. Additionally, nothing in this ESI Stipulation shall be deemed to waive or limit either Party's right to object to the production of certain ESI, pursuant to Federal Rule of Civil Procedure 26(b)(2)(B) on the ground that the sources are not reasonably accessible because of undue burden or cost, or are not proportional to the needs of the case, or are being withheld as documents subject to the attorney-client privilege or attorney work-product doctrine.

36. The production of privileged or work-product protected documents, electronically stored information ("ESI") or information, whether inadvertent or otherwise, is not a waiver of the privilege or protection from discovery in this case or in any other federal or state proceeding. This paragraph shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502(d). Nothing contained herein is intended to or shall serve to limit a party's right to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production.

37. The Parties will draft an agreed-upon confidentiality stipulation and protective order for the Court's consideration that will govern the Parties' production of all documents and information pursuant to this Stipulation. The Parties agree that any and all documents and

information received pursuant to this Protocol will be used only in the above-captioned matter and not for any other purpose, including any other litigation between Plaintiff and Defendant.

## **MISCELLANEOUS**

38. Third parties subpoenaed in this matter may agree to follow the same requirements and terms of this Order. Upon receipt of any ESI in response to a subpoena or other third-party request, the Requesting Party will provide a copy to the other party.

39. This ESI Stipulation may be changed by order of the Court or further signed written agreement of the Parties. Any Party may move for relief from any of its provisions for good cause shown, or the Parties may agree to different or additional procedures or protections for any particular ESI materials or information.

40. Nothing herein shall amend, alter, or otherwise change or supersede the terms and conditions contained in the Stipulated Protective Order.

**IT IS SO ORDERED.**

Dated this 25th day of October, 2024.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE

| | |
|---|---|
| DICKINSON WRIGHT PLLC | KILPATRICK TOWNSEND LLP- New York |
| By: s/ *Jeffrey H. Kass*<br>Jeffrey H. Kass, # 44305<br>Dickinson Wright PLLC<br>1626 Wazee Street, Suite 200<br>Denver, Colorado 80202<br>Tel: (303) 723-8400<br>Fax: (844) 670-6009<br>Email: JKass@dickinson-wright.com<br><br>***Attorneys for Plaintiff NRRM, LLC*** | By: s/Bryan J. Wolin<br>Bryan J. Wolin<br>3 Times Square, 28th Floor<br>New York, NY 10036<br>212-775-8700<br>Email: bwolin@ktslaw.com<br>*Admitted pro hac vice*<br><br>KILPATRICK TOWNSEND LLP - Atlanta<br><br>Nichole Davis Chollet<br>1100 Peachtree Street NE<br>Suite 2800<br>Atlanta, GA 30309<br>404-815-6500<br>Fax: 404-815-6555<br>Email: nchollet@ktslaw.com<br>*Admitted pro hac vice*<br><br>***Attorneys for Defendants MVF US LLC and Marketing VF LTD*** |

C:\Users\coxla\ND Office Echo\VAULT-WWDBO0GF - GoWizard FINAL Stipulated ESI Order (10.2424) 4888-1676-3634 v.1.docx